Good morning, Your Honors. The new place of court. My name is Marjorie Hoff, and I am William Terry Berry's lawyer. I'd like to reserve three minutes for a moment. We're here today because the district court disregarded an undisputed material fact. In this case, specifically, the district court found that William Terry Berry was injured when he was struck by his own vehicle. It's undisputed throughout the record that there was physical contact between Mr. Terry Berry and his vehicle, and it was that contact that caused him injury. The district court's order is inconsistent, internally inconsistent, where the district court acknowledges physical contact by writing the vehicle and the temporary traffic sign both struck Mr. Terry Berry, causing injuries. And two paragraphs later, the district court announces that it's undisputed that Mr. Terry Berry was ten feet away from his vehicle when the incident occurred. Well, I just want to be clear. He was ten feet away when the other car hit his vehicle. He obviously was not ten feet away when he was hit by his own vehicle. Correct, Your Honor. And the plane-producing event, the plane-producing injury, was not the contact between the uninsured drunk driver vehicle and his flatbed. It was the plane-producing injury occurrence when his truck hit him. The language in the policy indicated that occupying the vehicle and expanding the plane language of the term occupying, from what we would all know what to mean in the Web Search Dictionary or what we learned in elementary school as being inside a vehicle, to include being not only in, but also upon getting in, on, out, or off. The error here by the district court was when the physical contact caused the injury with the vehicle, that that might be in order to get to the erroneous conclusion of law that he was not occupying the vehicle. There is not a case in the nation, although this is the nation's first impression for this court and also for Nevada, there is not a case in the nation that under these facts finds there is not language when there are two main criteria. Number one, physical contact, and number two, a person utilizing their vehicle for the essential purposes of their work. Does the district court found that occupying was not an ambiguous term? I do agree that the district court found that occupying was not an ambiguous term. However, I don't believe that that's the correct conclusion, and here's why. There are 12 different tests that have been sent out throughout this nation that interpret this exact same or very similar language in insurance policies. So 12 different jurors, 12 different tests have been laid out by numerous different jurisdictions. That's because tests have the language that was in the policy. Some have the exact language that was in the policy, and others have a, I don't use another term for getting out. I can't remember what the term is, but it was another term for getting out, like aligning from, aligning from is what the others. So if what you just saw is case, and you said a juror with the exact language with this Occupy isn't ambiguous in that context. There are three cases. What's your absolute strongest case? You said there's one with identical language to this policy. So what's your strongest case language that's identical to the definition of occupy in this policy? That would most likely be the Linn case, which is an unpublished case out of the Third Circuit. In the Linn case, there was a tow truck driver that was dispatched to tow a disabled vehicle, and when he got there, the car's tire was flat, and he wasn't able to tow it, so he had to call somebody else to come in with a flatbed and tow, and tow the vehicle. When the flatbed arrived, he was helping the other tow truck driver put the car out of the flatbed, so he wasn't even, he wasn't even at that point utilizing his own vehicle that he had brought in, and a bypassing car struck him with a mirror and caused him, it caused him injury. Let me, with you, as far as I think I can, and let's see what happens, I'm willing to ask my question, that we decide whether he is occupying the vehicle not at the time the other vehicle hits his truck, but rather at the time that his truck hits him. That was the thing for you to say, right? Well, that's all, I'm willing to say, okay, let's figure out if he's occupying the truck within the meaning of the policy when his own truck hits him, and the definition of upon, I don't know if it was upon, getting in, I was not doing that, on, getting on, getting out, or getting off. So, how does he satisfy the definition of occupying, even if we say that we determine occupancy at the time he's hit by his truck? Your Honor, the closest definition that we have under the definition given in the policy would be that he was upon the vehicle. When he had physical contact with the vehicle, the vehicle was upon him. He was upon the vehicle. No, no, no, it says upon the vehicle. It doesn't say that the vehicle's upon him. Right, and that would be, and again, that leads us back to the fact that the language is ambiguous in that every other court in the United States that has interpreted this under these facts, where somebody's working, and as part of their work, they're required to get in and out of the vehicle, or in and out of the vehicle, like Mr. Gary Berry was, they thought that that's an essential use of the vehicle, and that when, under those facts, there's intended to be coverage, and that leads to the ambiguity in the policy that would require that. Those are interstitial, is what happened, and I don't think there's an interstitial about it. At the time the other vehicle hits his truck, he's not in the process of trying to get into his truck. He's out working on the sign. He's taking it away. He was approximately 10 feet away. He had completed his work on the sign, and he was turned, and heading back to the truck was his testimony, with the sign to put it back into his truck. So he was vehicle-oriented at the time, which is the test under the Pennsylvania case Unica that was adopted in both the Blake case by the 11th Circuit, and the Argonaut case by the 3rd Circuit, which also has extremely similar facts to this one in the Argonaut case. Mr. Berry, you were arguing then that he was in the process of getting in. He just hadn't physically reached the truck. He was vehicle-oriented. Certainly under the four-prong test that has been adopted by the 3rd Circuits and the 11th to be covered under the policy, under this language, the four-prong test was that he had to be vehicle-oriented, which he was, because he had finished his work, and he was heading back to his vehicle with the intention to get back in and continue on with his work. This was part of his job, obviously. His job was working on road construction. So this is the reason the vehicle was provided to him. He's put out there on the road for the specific purpose of going out, getting out of the car, working on the road construction, getting back in the car, going out to the next job, getting back in the truck, going out to the next job. That's what the district court found. You give us the Alabama case, Unica. It concludes that the act of, quote, getting in requires an affirmative act or movement to effect an entrance. And now I'm at your excerpts from the record at 49, and so here's what Judge Navarro says. The undisputed facts indicate that Terriberry was not undertaking any affirmative act or movement related to his employer's truck when the accident occurred. Terriberry drove the truck to the accident site and got up to perform maintenance on a road sign that was located at least 10 feet away where he had parked, the citation in the record. He had nearly but not yet accomplished the first phase of his task upon completion, which he intended to head back to the truck. She says that's not occupying, that's not getting in. Because, again, she ignores, she's not excluded under those circumstances. If you look at the excerpts of the record, 51 to 54, he clearly states that he had completed his work on that sign and was trying to head back to the vehicle at the time he heard the screeching and noticed his car coming through and noticed his truck coming at him before the truck made contact with him. But the key element here is that the injury-producing event was not when the truck driver hit his truck but when his truck hit him. And that's the difference between a case like this and a case like Cook. Because in Cook, there were two very important facts that are differentiated here. Number one, Mr. Cook, the facts under that case, they found that he was not heading to get into, he was not even heading to get into the vehicle at that time. The record indicated that he had gone across the street to get his coffee, he was going to head back into the jail to get his lunch box and his coat, and then head to the vehicle. So that's the number one differentiated fact. He had one more stop before he went back to the vehicle. The other important fact that's differentiated, that's different than our case than Cook, is that the vehicle that Mr. Cook was getting into was to transport him to his job. It was not a vehicle that was an essential part of his job. Unlike the Argonaut case, and unlike the Mutual case, and unlike the Lynn case, all of which are perpetually similar to this case where we have a tow truck driver whose job is to go out on the road, a sanitation worker whose job is to be getting in and off the truck and all of those cases are determined to have coverage. This is not technically relevant as a legal matter, but I just want to understand what's going on here. My guess is that he's covered by workers' comp, but that the amount that he gets under workers' comp is substantially less than he would get were he able to recover from the insurance policy. The only evidence we have of the record regarding the workers' comp is that the workers' comp claim was denied. It was denied? It was denied. It was denied. According to what we have on the record, which is just the big Terry Berry's testimony, which can be found at ER 140, he testified that it was denied because he was too late. Substantial limitations, it depends. When you say too late, he didn't file his claim timely. His claim was not timely filed is what the record shows of this evidence. I'm not sure that that's the accurate reason for the denial of the workers' comp claim, but that's all that we have on the record is his testimony. You do not represent him with respect to any workers' comp claim? I do not represent him with respect to any workers' comp claim. It would be a hard comp claim to lose everything. This will help some of the managers. I would like to reserve the rest of my time. The other side, if it's necessary. Thank you. Good morning. May it please the court. Andrew Green for Appley Liberty Mutual Fire Insurance Company. There's an issue that was raised there with regards to some notion that there's no dispute with the facts in terms of the pallet being destroyed by the truck. The deposition testimony was that upon hearing the accident, the appellant turned and ran. The appellant started that from a position behind the signs, the signs between he and the truck, and the appellant answered questions to the effect that the truck had signed, the signs pushed into the appellant as he was turning and running, and the appellant contacted the barriers. Can you really bring that up to clarify that I don't believe that that particular issue is undisputed, that there was contact with the truck? Well, in summary judgment, we take the facts in the light of what's favorable, sometimes in many ways. Agreed. Agreed. I raised that with regard to the issue of if we're going to look at exactly what the occupancy evaluation should be, should it be when there was first an accident, or when there was intended to be some contact? Well, that's her position, that the claim causing injury, and she made this decision that the claim-based injury was with the truck hitting him, not with the truck driving the truck. So, do you see that distinction in your view? I'm not sure that I do see a distinction with regard to that, although I'm not sure that it matters in this particular circumstance, given the occupancy term and the definition that's being applied. The definition being in upon getting in and out or off. The district court, in her order, indicated that it was admitted that the vehicle was unoccupied. I don't think the order specifically went on to clarify. The plaintiff's complaint pled that the vehicle was unoccupied, quote, unoccupied, end quote. That was in there twice. From a kind of a standpoint in terms of evaluating this particular term, that is significant. It's not only additional admission pursuant to a couple of the authorities that were presented, but it is also a recognition of the use of the term in its plain and ordinary meaning. So, it's not a circumstance where there's anything left to discuss, and it's also a circumstance where the rest of the facts were consistent with that. The plaintiff was presented with those components of his complaint, asked if he agreed that that was an accurate statement. He agreed. Asked if he said if anything needed to be added to it in order to make it more accurate. No, nothing needed to be added to it. We have to say I'm a little reluctant to quote someone to a concession that was occupied within the meaning, that was unoccupied, within the meaning of the policy. We know that insurance policies have all kinds of specialized means, and, indeed, this policy is taken great care to define unoccupied, still unoccupied, so that we know what the specialized meaning is within the policy. No, I mean, the fact that he might have said unoccupied, in that sense, doesn't necessarily mean that it weren't included in the definitions of the Whitewood policy. The reference to unoccupied in the complaint, though, is at least consistent with the occupancy definition that exists in the policy and the argument, of course. Sure, and the argument is not to say this is a recognition of those specific terms and the meaning of the policy. He recognized that he was outside the vehicle, but that doesn't mean that's not necessarily determinative for purposes of a policy definition. Do you think that's determinative that he was outside the vehicle? I don't think that the definition makes that determinative. I think the definition permits the case-by-case evaluation whereby it's possible that a claimant could be outside as to satisfy this occupancy term. I don't believe that's the circumstance in this particular case, given what is presumed and what is undisputed. Counsel, can you take issue with imposing counsel's reliance on the Third Circuit decision in Lee and as being persuasive in terms of the way we should look at the definition of occupied in this case? Yes, and for a couple of reasons. This is a matter that's pending in the United States District Court in Nevada. It is brought by a Nevada resident pursuant to a Nevada policy based upon an accident that happened in Nevada. It's a matter that's going to be resolved by Nevada law. What I think is evident is there are no statements of any of the other courts in Nevada interpreting certainly this term, this occupancy term and this definition of it, but there are cases from the Nevada Supreme Court that do specifically provide guidelines in terms of how to interpret contracts and specifically insurance policies. And where there's not an ambiguity, those terms are supposed to be given their plain and ordinary meaning and that there's not supposed to be a rewriting of the policies in terms of the authority that opposes sites. That is effectively what it seeks to accomplish, which is a rewriting of the policy by imposing other factors. In the Lynn case, the factors that were being considered were still through the Unica case. It's a Pennsylvania case. There's no indication anywhere in Nevada that there would be any adoption of that. And instead, the Unica case includes discussion that the reason that those four factors were adopted was because the court determined that needed to be done for the purpose of keeping the definition of occupancy consistent with the legislative intent of a statute that was the uninsured motherhood statute in Pennsylvania. Does this fill the facts as stated in his deposition? I don't have to hear it from everybody, but it was recounted as just an argument, but he says in his deposition, at the time I was struck, I had turned around and was oriented toward the truck, and I was getting into it. I understand that that can be disputed, but just assume that that's true. Why is that not getting in with the rewriting of the policy? A couple of different reasons. There's nothing to suggest that some of the Nevada would satisfy that. In addition, well, I'm really just interested in, in terms of our subpolicy, getting in the vehicle is pushing back the vehicle within the trucks of the policy. Why is it not getting in, assuming it's a certain group that is currently on the vehicle, 10 feet away, and is on its way to getting into the vehicle? Now, why is that not getting in to the vehicle policy? I think it's based upon the case-by-case analysis, and in this particular circumstance, where it relates to whether it's possible that there could be non-office contactments that will accomplish this particular, or satisfy this particular activity provision here. I don't understand you yet. You keep, keep going. Help me out of the corner. Oh, sorry. He's 10 feet away. He's walking towards the car. That's not getting in. Well, he's intended to get in only to the car. What's the purpose of getting in? So, why is that not getting into the vehicle policy? There's clearly, even in that recognition, some core conduct that's going to follow. He's going to reach the car, presumably if none of this occurs, and he's going to get in, walking, he's clearly walking towards it. It's clearly distinct. Having an intent to get in is clearly distinct. This sounds sort of law professor-ish, but I'm afraid to say I have the answer. No, let's have him, which is not the case, let's have him at the car reaching for the door handle. Is he getting in? Probably getting in. But the question is, does somebody have time, like he's now not 10 feet away, he's rather 60 inches away, and his hand's almost on the handle? Probably, I would describe that as imminence, in the sense that that act is going to follow through, and it's going to result in him getting in. It's distinct from an intent. It's distinct from taking an action on intent. And I think the distinction is, one has a more finite ability for measurement than the other. You have a more finite ability for measurement when you're reaching at the handle, and the act of getting in is underway, whereas walking to the car has no finite ability for measurement in the other direction, because there's no way to say there's a moment in time before which there would not be occupancy. That's how I would attempt to distinguish those two. And in this particular circumstance, hopefully to resolve any concern with regard to that, kind of statical, the specific testimony was that the helmsman at 33 was getting ready to walk away to distract one of the guards. He had completed a part where he just had to lift the sign off the thing. It was on the side sign to be lifted. So there was other things that needed to occur. Mr. Green, the Chief Judge Navarro says he had nearly, but not yet accomplished, the first phase of his task upon completion, which he intended to head back to the truck to get the tools he needed to accomplish the next layer. The sun is reaching higher. This is the record at 48 to 55. If Cook isn't getting in, then the plaintiff's best angle, to get into an argument, isn't getting in because in Cook, the Alabama case, I thought the court concluded that getting in requires an affirmative act or movement to effect an inference. Is that what Judge Fletcher asked you to do? Yes. And I agree. I think that the appellant is what be most angling towards that getting in component of that definition of an inference. So if he had, in fact, accomplished the first phase, because she says, the judge says, he had nearly, but not yet accomplished, the first phase of his task, which is the sign. If he had done that and attempted to get in, he'd be covered, wouldn't he? I think it has to be measured by whatever conduct he engages in that they've purposed that intent. And I think the problem that we're presented here is, in addition to this testimony with regard to his catastrophe, his total resign, there's the testimony that the accident occurred, and even here it goes out of his sight. He turned and ran. So the conduct is not measured by an attempt to get in the car at this point, rather an attempt to go in the other direction. It was much made at the district court level. But he fled. He was a pedestrian, didn't he? He did. Yeah. And was there much made of that at the district court? I couldn't tell. Both the pleading that he was a pedestrian and the pleading that the truck was unoccupied, both specifically raised as in the complaint. And then further confirmed, at least in discovery, that he didn't have a dispute with those descriptions. Briefly responding to the discussion about Lynn potentially being the best case for the plaintiff, Lynn is a case that's, again, it has laid in and it follows UNICA. And when you read through it, the court in Lynn actually goes through and attempts to apply those UNICA criteria, proximity specific relation to the vehicle, orientation to the vehicle as opposed to the highway or the sidewalk. And the Lynn court disagreed with other cases where the UNICA standard had attempted to be utilized. I offer that simply to clarify, given that the cases in Alabama, whether it's Cook, whether it's Argonne, whether it's the cases in Pennsylvania that's in Lynn or UNICA, they're inconsistent with the requirements that Nevada would impose and would require something of a union for you to do any of those things.  and doesn't do anything, apparently, to offer any greater clarity. Instead, there are disagreements on how to apply that. And I would submit that the reference to things like the essential needs for use of the vehicle or vehicle orientation are not helpful and do not distill anything in addition, particularly in this circumstance. Ultimately, from a pragmatic standpoint, what the appellate is asking for here are things that are not in the policy. They're asking for a definition. They're asking to apply other criteria that don't exist that are inconsistent in terms of the policy and attempt to nullify the terms of the policy in a circumstance where there are no facts to justify it. The facts here don't create any ambiguity. The language here does not increase any ambiguity. And those were the findings of the district court that underlined the summary judgment and that the revision five-year service company provided us with a little more than a few plus numbers. Thank you. Thank you, Your Honors. With regards to the language in the proceeding, the proceeding uses plain language terms in a state court pleading in a notice pleading state that's filed in the state court and removed. So using the term pedestrian, there's no dispute that he was outside the vehicle and standing on the street. To use the term unoccupied, there's no dispute that he wasn't sitting within the cab of the truck. But in that same paragraph, the complaint states that as a result of the impact, the vehicle in a temporary traffic control sign struck a security break. And the district court adopted that very language, being the one most favorable to the plaintiff. He alluded under what we all learned in kindergarten unoccupied or occupied might mean. The policy here, Liberty Mutual, has expanded that language and caused an ambiguity to exist. And we know that that language is ambiguous because there have been 12 different tests set out throughout this region that interpret that language. But every single interpretation of that language under two informed facts we have here. Number one, visible contact with the vehicle. And number two, somebody using the vehicle as an essential part of their work. Every single case finds communication. The Lynn case is distinguished by other cases and does have some negative treatment. But those negative treatment cases are different. They're non-people working. They are people with Samaritans who stop on the side of the road to help other people with their vehicles and become injured. Now the public policy of those decisions decide that when the purpose of putting this vehicle on the road, the very purpose of putting this vehicle on the road, the very purpose for which Las Vegas County bought coverage from Liberty Mutual for this vehicle was to put their employees out on the highways where on those highways they are going to get in and out and in and out and climb on and get off of those vehicles in order to do the construction work and set out the barricades that are important to keep the community safe. That is the very reason those trucks are out there on the road and the very reason that they're insured. So certainly they're getting in and out of them all day during their entire shift. And under the cases like Lynn, like Oregon, which are exactly factually similar to this case, a two-truck driver, a sanitation worker, those are exactly factually similar. And the only circuit court opinions, the public circuit court opinions that address that adopt the unit for factors and find in favor of coverage under these facts. Thank you very much. Thank you. Thank you. Those are the three arguments in the case. The case in the third argument is that Liberty Mutual Fire Insurance Company is not sufficient for a decision.
judges: W. Fletcher, Rawlinson, Pratt